[Civ. No. 23516. Fourth Dist., Div. Two. Oct. 9, 1980.]

MICHAEL C. DAWES, a Minor, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ROBERT C. MARDIAN, JR., et al., Real Parties in Interest.

COUNSEL

Behrens & Hanley, Russell G. Behrens, William B. Hanley, Horton, Barbaro & Reilly and Jay Cordell Horton for Petitioners.

No appearance for Respondent.

Brill, Hunt & DeBuys, Horvitz & Greines, Irving H. Greines, Martin Stein, Portigal & Hammerton, James P. Slack, Smith, Hunkins & Wilson and Robert J. Smith for Real Parties in Interest.

OPINION

KAUFMAN, Acting P. J.—Michael C. Dawes, then 13 years old, suffered personal injuries when struck by an automobile driven by Robert C. Mardian, Jr. The minor and his parents (hereafter petitioners) filed suit in Orange County Superior Court against Mardian and a business entity allegedly principally owned by Mardian, Wind & Sea Restaurants, Inc. and Wind & Sea Restaurants, Inc., dba Harpoon Henry's Seafood Restaurant,[1] to recover damages for the minor's personal injuries and the attendant medical and related expense to his parents. In the fifth count of the first amended complaint, petitioners attempted to allege facts that would support a recovery of punitive damages. On motion of the defendants, the court struck those allegations on the ground that petitioners would not be entitled to punitive damages on the facts alleged, thus removing the issue of punitive damages from the case. Petitioners sought review of the order by petitioning for a writ of mandate. An alternative writ issued, and we have concluded that the peremptory writ should be granted.

In essence, the stricken allegations were that defendant Mardian was the principal owner of and was employed in a managerial capacity by the business entity (hereafter Wind & Sea) and was acting within the course and scope of his employment and with the authorization of de-

---

[1] Also named as a defendant was Larry A. Hall, another employee of the business entity, who was a passenger in the automobile driven by Mardian.

fendant Wind & Sea at the time of the accident; that at about 1:30 in the afternoon on June 5, 1977, at Dana Point Harbor, the minor was walking his bicycle on the pedestrian sidewalk at the southwest corner of the intersection of Del Obispo Street and the entrance to Doheny State Park; that both vehicular and pedestrian traffic were heavy and there were many pedestrians and bicyclists in the vicinity; that defendant Mardian, while intoxicated, was then and there driving a 1967 Ferrari automobile; that he made a righthand turn from Del Prado Street without stopping at the stop sign controlling traffic "and proceeded in an easterly direction on said Del Obispo Street, zizagging in and out of traffic, in a designated 35 mile per hour zone, and gaining speed until he was traveling in excess of 65 miles per hour, with reckless disregard of the probable consequences of said conduct and with reckless disregard of the safety of others. . ."; that Mardian "knew that he was intoxicated and knew that he was operating said 1967 Ferrari at a speed in excess of 65 miles per hour in a 35 mile per hour zone, on a Sunday afternoon, in a marina visited by many persons,. . .and with knowledge that probable serious injury would result to persons in the area,. . .as a result of said conduct, and with reckless disregard of the safety of others, including Plaintiff Michael C. Dawes"; that immediately following the accident Mardian and his fellow employee and passenger, Larry A. Hall (see fn. 1, *ante*), "falsely and fraudulently" informed the investigating California Highway Patrol officer that Hall was operating the vehicle when it struck the minor; and that this was done for the purpose of obstructing the investigation and Mardian's avoiding responsibility.

Another paragraph stricken by the court alleged that "with conscious disregard of the safety of others, including Plaintiff Michael C. Dawes, [Wind & Sea] willfully failed to comply with California Business and Professions Code Section 25602 by serving alcoholic beverages to Defendant Robert Mardian, Jr., an obviously intoxicated person, well knowing the peril to others, including Michael C. Dawes, created by said violation of [the statute]"; and that Wind & Sea "knew that Defendant Robert Mardian, Jr., was intoxicated and would be driving an automobile on a public highway and, in conscious disregard of the safety of others, including Plaintiff Michael C. Dawes, willfully served alcoholic beverages to Defendant Robert Mardian, Jr., who was obviously intoxicated."

Petitioners contend that the allegations stricken by the court set forth facts which, if proved, would support a finding that Mardian act-

ed with conscious disregard of the safety of third persons and the probability of an accident and injuries such as actually occurred and resulted. Such a finding, they further contend, would support an award of punitive damages under Civil Code section 3294.[2]

Real parties in interest (defendants) contend that the trial court acted with propriety in striking the allegations mentioned, urging that the decision in *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517 [322 P.2d 933], is controlling and that the trial court was bound to follow it. Defendants acknowledge that the recent decision in *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890 [157 Cal.Rptr. 693, 598 P.2d 854], might compel a different result. However, citing *Mau* v. *Superior Court* (1980) 101 Cal.App.3d 875 [161 Cal.Rptr. 895], they contend that the *Taylor* decision is to be given only prospective effect and therefore does not apply to this case.

In response, petitioners contend that *Taylor* changed the law only in respect to driving a motor vehicle while intoxicated; that it has been the law in California for quite a long time that punitive damages may be recovered in a personal injury action if the conduct of the defendant was such as to amount to a conscious disregard of the safety of and probable injury to other persons; and that the factual allegations stricken by the trial court evidence such a conscious disregard of safety and probable injury. Failing all else, they urge that notwithstanding the decision in *Mau* v. *Superior Court, supra,* the Supreme Court decision in *Taylor* v. *Superior Court, supra,* should be given limited retroactive effect so as to apply to the case at bench.

We agree with petitioners' initial contentions and therefore do not reach the question whether the *Taylor* decision should be given limited retroactive effect.

Inasmuch as Civil Code section 3294 requires as a prerequisite to the recovery of punitive damages that the defendant "has been guilty of oppression, fraud, or malice," the cases have uniformly recognized that proof of negligence, even gross negligence, or recklessness is insufficient to warrant an award of punitive damages. (E.g., *G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 31 [122 Cal.Rptr.

---

[2]Civil Code section 3294 reads: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

218]; *Gombos v. Ashe, supra,* 158 Cal.App.2d at p. 527; see *Taylor* v. *Superior Court, supra,* 24 Cal.3d at pp. 895, 900 [conc. opn. of Bird, C.J.], 907 [dis. opn. of Clark, J.]; *Nolin* v. *National Convenience Stores, Inc.* (1979) 95 Cal.App.3d 279, 285-286 [157 Cal.Rptr. 32]; see also *Donnelly* v. *Southern Pacific Co.* (1941) 18 Cal.2d 863, 869 [118 P.2d 465].) However, since 1974 at the latest, and probably since a much earlier date, the term "malice" as used in Civil Code section 3294 has been interpreted as including a conscious disregard of the probability that the actor's conduct will result in injury to others. (*G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d at pp. 30-32; see *Taylor* v. *Superior Court, supra,* 24 Cal.3d at p. 895; *Donnelly* v. *Southern Pacific Co., supra,* 18 Cal.2d at pp. 869-870; *Nolin* v. *National Convenience Stores, Inc., supra,* 95 Cal.App.3d at p. 286; cf. *Pelletti* v. *Membrila* (1965) 234 Cal.App.2d 606, 611-613 [44 Cal.Rptr. 588]; *Palmer* v. *Agid* (1959) 171 Cal.App.2d 271, 277 [340 P.2d 303]; see also Franson, *Exemplary Damages in Vehicle Accident Cases* (1975) 50 State Bar J. 93, 94, 148.) Even in *Gombos* v. *Ashe,* the decision said by defendants to be controlling, the court recognized that "criminal indifference towards the obligations owed to others" might be "malice" within the meaning of Civil Code section 3294. (158 Cal.App.2d at p. 527.)

The decision in *Taylor* v. *Superior Court, supra,* 24 Cal.3d 890, did not change the law in this regard. It simply held, contrary to the decision in *Gombos* v. *Ashe, supra,* 158 Cal.App.2d 517, that driving a vehicle while intoxicated may in appropriate circumstances evidence a conscious disregard of probable injury to others and be sufficient to warrant an award of punitive damages. ■ Thus, petitioners are correct that under the law as it existed prior to the *Taylor* decision, the allegations set forth in the fifth count of their first amended complaint relating to Mardian's conduct were sufficient to support an award of punitive damages. Petitioners alleged a good deal more than Mardian's decision to drive and his driving in an intoxicated condition. They alleged that "with knowledge that probable serious injury would result to persons in the area," Mardian ran a stop sign, and was zigzagging in and out of traffic at a speed in excess of 65 miles per hour in a 35-mile-per-hour zone at the entrance to a popular recreation area on a Sunday afternoon when many pedestrians and bicyclists were in the immediate vicinity. They also alleged that immediately after the accident Mardian and his passenger falsely reported to the police that the passenger was driving rather than Mardian. If these allegations were proved at trial, the factfinder could reasonably find that Mardian acted with "malice"

—with a conscious disregard of safety and the probable injury of others as a result of his conduct.

Defendants urge that Mardian's conduct was consistent with and undoubtedly attributable to his intoxication so that in legal principle the allegations of Mardian's specific conduct really add nothing, that we are still talking about the risks created by driving while intoxicated; and that the decision in *Gombos* v. *Ashe* was controlling and should have been followed by the trial court. In this connection defendants call our attention to the court's rejection of a similar attempt in *Taylor* v. *Superior Court*, to distinguish that case from *Gombos* v. *Ashe* on the basis of "additional allegations...which include defendant's history of alcoholism, his prior arrests and convictions for drunk driving, his prior accident attributable to his intoxication, and his acceptance of employment involving the transportation of alcoholic beverages." (24 Cal.3d at p. 896.) Defendant's analysis is faulty, and we do not agree that the risk created generally by one who becomes intoxicated and decides nevertheless to drive a vehicle on the public streets is the same as the risk created by an intoxicated driver's decision to zigzag in and out of traffic at 65 miles per hour in a crowded beach recreation area at 1:30 in the afternoon on a Sunday in June. The risk of injury to others from ordinary driving while intoxicated is certainly foreseeable, but it is not necessarily probable. The risk of injury to others from Mardian's conduct under the circumstances alleged was probable.

The portion of the *Taylor* decision upon which defendants rely in support of their argument in reality supports the conclusion that the case at bench is distinguishable and should be distinguished from *Gombos* v. *Ashe*. Noting that in *Gombos* the plaintiff had alleged that the defendant "drove his car in a 'highly reckless manner with absolute disregard and callous indifference to the rights and safety' of others, in that he became 'knowingly and wilfully intoxicated' despite his knowledge that his intoxication 'rendered him physically unfit' to drive safely," the court in *Taylor* stated: "Yet the essence of the *Gombos* and present complaints remains the same: Defendant became intoxicated and thereafter drove a car while in that condition, despite his knowledge of the safety hazard he created thereby. This is the essential gravamen of the complaint...." (24 Cal.3d at p. 896.) Thus, despite the conclusory allegations of reckless disregard in *Gombos* the court in *Taylor* viewed *Gombos* as involving only ordinary intoxicated driving. And rightly so, for so far as the decision discloses there were no allegations of fact in *Gombos* indicating a conscious disregard of probable injury to

others. Indeed, the court in *Gombos* stated: "It will be noted that, although the pleader uses such adverbs as 'wilfully,' 'wrongfully,' 'recklessly' and 'unlawfully,' when the allegation is read as a whole it amounts to the claim that because the defendant got intoxicated knowing that he was going to drive on the public highway the actions of defendant became wrongful, wilful, reckless and unlawful. In our opinion such allegations do not charge malice, express or implied." (158 Cal.App.2d at p. 526.)

In contrast, in the case at bench, as previously noted, petitioners pleaded specific facts from which the conscious disregard of probable injury to others may reasonably be inferred. Justice Franson aptly noted the distinction in his article on punitive damages in vehicle accident cases: ██ "[A]llegations of intoxication, excessive speed, driving with defective equipment or the running of a stop signal, without more, do not state a cause of action for punitive damages. [Par.] On the other hand, if the facts show that the defendant intentionally drove his vehicle at a high speed into an intersection crowded with pedestrians, or if he drove at a high speed through a crowded residential area where children were playing in the street, a legitimate inference of actual malice perhaps could arise. This would be particularly true if the defendant had not been drinking, or, if drinking, he was not under the influence to the point where he was incapable of being aware of the situation confronting him. Under these circumstances, it reasonably might be said that the defendant acted in such an outrageous and reprehensible manner that the jury could infer that he knowingly disregarded the substantial certainty of injury to others." (Franson, *Exemplary Damages in Vehicle Accident Cases, supra*, 50 State Bar J., at p. 148, fn. omitted; cf. *Pelleti* v. *Membrila, supra*, 234 Cal.App.2d at p. 612; *Palmer* v. *Agid, supra*, 171 Cal.App.2d at p. 277.)

It is apparently true, as defendants assert, that prior to the decision in *Taylor* v. *Superior Court, supra*, 24 Cal.3d 890, no appellate decision in this state had approved the recovery of punitive damages in a personal injury action arising out of a vehicle accident caused by the defendant's driving while intoxicated. However, we are not persuaded by the absence of such a decision that recovery of punitive damages would not have been allowed in a proper case. There is not and there never was one rule of law for intoxicated driving cases and another rule of law for other types of cases. Cases are decided on the basis of general legal principles not the categories into which particular cases might be pigeonholed. (See *Nolin* v. *National Convenience Stores, Inc., supra*, 95

Cal.App.3d at pp. 285-286.) ■ As we have pointed out, it was established in this state, by 1974 at the latest, that a conscious disregard of safety and probable injury to others could constitute "malice" within the meaning of that term as used in Civil Code section 3294.

We conclude, therefore, that with respect to defendant Mardian the court could only exercise its discretion in one way in ruling on the motion to strike—by denying the motion.[3] ■ "Although we rarely grant extraordinary relief at the pleading stage of a lawsuit, mandamus will lie when it appears that the trial court has deprived the party of an opportunity to plead its cause of action or defense, and when extraordinary relief may prevent a needless and expensive trial and reversal." (*Taylor v. Superior Court, supra,* 24 Cal.3d at p. 894.)

■ The only question remaining is whether the allegations were properly stricken as to the business entity, Wind & Sea. The petitioners make no argument and cite no authority in support of the possibility of recovering punitive damages on the basis of Wind & Sea's alleged violation of Business and Professions Code section 25602. Accordingly, we do not consider that question and will affirm the order of the trial court striking those allegations (par. IV of the Fifth Count). We have concluded, however, that the court's error in striking the allegations with respect to Mardian's conduct was erroneous with respect to Wind & Sea as well as Mardian himself.

Petitioners alleged that Mardian was a managerial employee and indeed the principal owner of Wind & Sea and that he was acting within the course and scope of his employment and with the authorization of Wind & Sea at the time of the accident. For purposes of the motion to strike, the truth of these allegations must be assumed, and assuming their truth a case has been stated for the recovery of punitive damages against Wind & Sea as well as Mardian. An employer may be held liable for punitive damages on account of the conduct of a managerial employee acting within the scope of the employment. (*Egan v. Mutual*

---

[3]We note that in respect to defendant Mardian's conduct, petitioners have pled that he acted in "*reckless* disregard" of the probability of injury to others rather than "conscious disregard," the formulation now generally accepted. (See *Taylor v. Superior Court, supra,* 24 Cal.3d at pp. 894-895; *Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452, 462 [113 Cal.Rptr. 711, 521 P.2d 1103]; *G. D. Searle & Co. v. Superior Court, supra,* 49 Cal.App.3d at p. 32.) However, this allegation is but a conclusion in any event. The factual allegations control, and the stricken allegations in the fifth count of the first amended complaint set forth specific facts that reasonably give rise to an inference of a *conscious* disregard of safety and probable injury to others on the part of defendant Mardian.

*of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [157 Cal.Rptr. 482, 598 P.2d 452]; *Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 [130 Cal.Rptr. 416]; *Hale* v. *Farmers Ins. Exch.* (1974) 42 Cal. App.3d 681, 690-691 [117 Cal.Rptr. 146].)

Let a peremptory writ of mandate issue to the Orange County Superior Court commanding it to vacate its order striking the allegations of the fifth count of the first amended complaint except for the allegations contained in paragraph IV of that count. The alternative writ heretofore issued is discharged.

McDaniel, J., and Morris, J., concurred.

The petitions of real parties in interest for a hearing by the Supreme Court were denied December 17, 1980.